**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William J Paynter, | No. CV-21-02024-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| UBS Financial Services Incorporated, et al., | |
| Respondents. | |

This case concerns an arbitration award that resolved the parties' various contract disputes.  Defendants UBS Financial Services Incorporated and UBS Credit Corporation (collectively "UBS") filed a Motion to Confirm Award, which it titled "Motion for Summary Judgment to Grant UBS's Cross-Petition to Confirm Arbitration Award" (Doc. 23).[1]  Plaintiff William Paynter ("Plaintiff") filed a cross Motion to Vacate Award, which he titled "Motion for Summary Judgment on Petition to Vacate Arbitration Award" (Doc. 24).[2]  The Court must decide whether Plaintiff has identified grounds for vacating the award under the Federal Arbitration Act (9 U.S.C. § 1 et seq.) ("FAA") and consistent New Jersey state arbitration law.  For the following reasons, the Court grants UBS's Motion to Confirm Award and denies Plaintiff's Motion to Vacate Award.

/ / /

---

[1] The Motion is fully briefed.  Plaintiff filed a Response (Doc. 25) and UBS filed a Reply (Doc. 29).

[2] The Motion is fully briefed. UBS filed a Response (Doc. 26) and Plaintiff filed a Reply (Doc. 28).

## I.        Background

Plaintiff worked as a former financial advisor for UBS from October 2014–April 2017.  (Doc. 1-3 at 29).  During that time, Plaintiff obtained loans from UBS (the "UBS loans") through UBS's financial advisor loan program (the "UBS loan program").  (*Id*.)  In executing the UBS loans, Plaintiff signed four promissory notes ("the Notes").  (Doc. 13 at 8–13 (Note #R00007313N)); (*Id*. at 24–29 (Note #R00007314N)); (*Id*. at 40–47 (Note #B00013471N)); (*Id*. at 58–65 (Note #B00013914N)).  Each Note required Plaintiff to repay the respective UBS loan in annual installment payments of principal and accrued interest.  (*Id*. at 8, 24, 40, 58).

The Notes contained (1) a choice of law provision and (2) either an arbitration clause or arbitration agreement.  Regarding choice of law, all four Notes stated it "SHALL BE GOVERENED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW."  (*Id*. at 13, 29, 43, 61).  Notes #R00007313N and #R00007314N included an arbitration clause stating, "any disputes between [Plaintiff] and UBS . . . will be determined by arbitration as authorized and governed by the arbitration law of the State of New Jersey."  (*Id*. at 11, 27).  Notes #B00013471N and #B00013914N included an arbitration agreement that "shall be governed and interpreted in accordance with the [FAA] and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles."  (*Id*. at 44–47, 62–65).

As part of the UBS loan program, each Note was accompanied by an associated Transition Agreement (*Id*. at 15–22, 31–38, 49–56, 67–74).  The Transition Agreements provided that UBS would pay Plaintiff "on an annual basis in the amount totaling the loan principal and accumulated interest due under the associated Note."  (Doc. 1-3 at 5).  However, UBS was released from such payment obligations "in the event that [Plaintiff's] employment with [UBS] is terminated, either voluntarily or involuntarily[.]" (*See* Doc. 13 at 15, 31, 49, 67).  Each Transition Agreement also included an arbitration

agreement that "shall be governed and interpreted in accordance with the [FAA] and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles." (*Id*. at 17–20, 33–36, 50–54, 68–72).

Furthermore, all of the referenced arbitration provisions specify that "any arbitration of a [c]overed [c]laim will be conducted under the auspices and rules of [FINRA] in accordance with the FINRA Code of Arbitration for Industry Disputes ('FINRA Arbitration Rules.')" (*Id*. at 11, 19, 27, 35, 45, 52, 63, 70).

The UBS loans became immediately due and payable upon the termination of Plaintiff's UBS employment. (*Id*. at 9, 25, 41, 59), which formed the basis of the parties' underlying arbitration proceedings (the "Prior Arbitration"). Below is a summary of the Prior Arbitration as well as the procedural history of the present matter.

## A.    The Underlying Arbitration Proceedings

The parties' Prior Arbitration arose from Plaintiff's disputed liability for payment of the UBS loans. UBS filed an "Amended Statement of Claim" (Doc. 1-3 at 28–42) with the Financial Industry Regulatory Authority ("FINRA") against Plaintiff. *See UBS Financial Services, Inc. and UBS Credit Corp. v. William J. Paynter*, FINRA Case No. 17-02850. Therein, UBS alleged Plaintiff failed to make payments under the Notes and misappropriated UBS's confidential and propriety customer information. (Doc. 1-3 at 21, 36–41).

Plaintiff filed an "Answer" (*Id*. at 44–67) setting forth counterclaims and affirmative defenses. Plaintiff alleged the following counter-claims against UBS relating to the Notes: breach of contract; fraud; breach of the implied covenant of good faith and fair dealing; negligent misrepresentation; tortious interference; constructive discharge; defamation per se; and intentional infliction of emotional distress. (*Id*. at 21, 44–67). Plaintiff also filed the following counterclaims against UBS relating to his employment with UBS: promissory estoppel; false light invasion of privacy; and violation of the Fair Labor Standards Act. (*Id*. at 21, 44–67). The allegations in his counterclaims formed the bases

of his affirmative defenses.  (*Id*. at 3).

After resolving various discovery disputes, FINRA Arbitrators Richard D. Fincher, Floyd Gerry Hoffman, and Dean Jackson Call (collectively "the Panel") conducted an evidentiary hearing in two phases: one that focused on UBS's claims and another that focused on Plaintiff's defenses and counterclaims.  (*Id*. at 6).  Thereafter, the Panel issued the final Arbitration Award (the "Award") (*Id*. at 2026) finding in part for UBS and in part for Plaintiff as follows:

(1)   Plaintiff is liable to UBS for an award of damages amounting to $1,897,662.34 for the repayment of the Notes;

(2)   Plaintiff is liable to UBS for an award of damages amounting to 75% of the accrued interest on the Notes;

(3)   Plaintiff must return certain client information to UBS;

(4)   UBS is jointly and severally liable to Plaintiff for an award of damages amounting to $200,000.00 due to constructive discharge, an award which "shall not be an offset";

(5)   UBS is jointly and severally liable to Plaintiff for award of damages amounting to $100,000.00 due to negligent misrepresentation of the loan program, an award which "shall not be an offset";

(6)   the rest of Plaintiff's counterclaims are denied; and

(7)   any and all claims for relief not specifically addressed during the Prior Arbitration, including any requests for punitive damages and attorneys' fees, are denied.

(*Id*.)

### B.   The Procedural History of the Present Matter

Plaintiff initially filed his Petition to Vacate Arbitration Award ("Petition to Vacate") (*Id*. at 2–18) in Maricopa County Superior Court, which UBS removed to this Court.  (Doc. 1).  Plaintiff requests this Court to vacate the portion of the Award finding him liable for the Notes under 9 U.S.C. § 10.  (*Id*. at 17).  UBS filed a Response (Doc. 12). The parties do not dispute the validity of the arbitration provisions in the Notes and

Transition Agreements, or that the Plaintiff's claims fall within its scope.

UBS then filed a cross Petition to Confirm Arbitration Award ("Petition to Confirm") (Doc. 13).[3]  UBS requests this Court to confirm the Award under 9 U.S.C. § 9 and enter judgment under 9 U.S.C. § 13.  (*Id.* at 4–5).  Plaintiff filed a Response (Doc. 17).

Four months later, UBS filed its Motion to Confirm Award and sought to incorporate the arguments made in its Petition to Confirm.  (Doc. 23 at 3).  Plaintiff filed its cross Motion to Vacate the same day and also sought to incorporate by reference the arguments made in his Petition to Vacate.  (Doc. 24 at 15).  Yet, the federal rules prohibit parties from incorporating by reference arguments made in other filings.  *See Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp. 3d 479, 505 (D. Ariz. 2020) ("[T]he Court will not sift through incorporated documents to determine which arguments are relevant to the issue presently before the Court.") (citing *Orr v. Bank of Am.*, 285 F.3d 764, 775 (9th Cir. 2002); *see also Foley v. Graham*, 2022 WL 1714293, at  *1 (9th Cir. May 27, 2022) ("We do not consider arguments incorporated by reference into the briefs.").  Nonetheless, for the sake of clarity, the Court will consider parties' arguments made in their filings as a whole when issuing this Order.

## II. Applicable Law

Parties may agree to state law rules for arbitration—even if such rules are inconsistent with those set forth in the FAA—so long as the parties clearly evidence their intent to be bound by such rules.  *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002).  However, a general choice-of-law clause only supplies "state substantive, decisional law, and not state law rules for arbitration." *Id.* (citing *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1211–1212 (9th Cir. 1998) (explaining a general choice-of-law clause is one that does not contain a specific reference to state arbitration rules)).

The text of the arbitration provisions in the Notes and Transition Agreements

---

[3] The matter is fully briefed.  Plaintiff filed a Response (Doc. 17).  UBS has not filed a Reply and the time to do so has passed.  *See* LRCiv. 7.2(c).

explicitly reference New Jersey state arbitration law. *See supra* Section I.A (the arbitration clauses state that "any disputes between [Plaintiff] and UBS . . . will be determined by arbitration as authorized and governed by the arbitration law of the State of New Jersey"; the arbitration agreements state it "shall be governed and interpreted in accordance with the [FAA] and the law of the State of New Jersey to the extent New Jersey law is not inconsistent with the FAA and without regard to conflicts of law principles"). This clearly conveys the parties' intention that the FAA and *consistent* New Jersey state rules for arbitration apply. Moreover, all of the Notes contained a general choice of law clause in favor of New Jersey state substantive law. *Id.* (all four Notes stated it "SHALL BE GOVERENED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD TO PRINCIPLESOF CONFLICTS OF LAW").

Accordingly, the Court's review of the Award is governed by (1) the federal procedural rules for arbitration under the FAA as interpreted by the circuit in which the Court sits; (2) New Jersey state law rules for arbitration that are consistent with the FAA; and (3) New Jersey state substantive, decisional law where applicable.

### A.    Procedural Rules for Vacating Awards Under the Federal Arbitration Act

The FAA provides district courts with jurisdiction to review arbitration awards. 9 U.S.C. §§ 9–12. A party to an arbitration may apply to a district court for an order confirming the arbitration award. 9 U.S.C. § 9. To obtain confirmation of an award, the FAA requires the moving party to file "(a) The agreement . . . . (2) The award . . . . [and] (3) Each notice, affidavit, or other paper used to confirm, modify, or correct the award . . . . " 9 U.S.C. § 13. A court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9; *See Stafford v. Baart Behavioral Health Servs*., 855 F. App'x 426, 427 (9th Cir. 2021) (granting an arbitration award because there were no grounds for vacatur).

"The [FAA] enumerates limited grounds on which a federal court may vacate,

modify, or correct an arbitral award." *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003). Section 10 authorizes a district court to vacate an arbitration award in the following limited circumstances:

> (1)  where the award was procured by corruption, fraud, or undue means;
>
> (2)  where there was evidence of partiality or corruption in the arbitrators;
>
> (3)  where the arbitrators were guilty of misconduct or misbehavior; or
>
> (4)  where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Stafford*, 855 F. App'x at 427 (citing 9 U.S.C. § 10(a)(1)–(4)) (internal quotations omitted). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). "[A]n award may be void in part, and good for the residue." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Lyle v. Rodgers*, 18 U.S. (5 Wheat.) 394, 409 (1820) ("[B]ut if that part which is void be so connected with the rest as to affect the justice of the case between the parties, the whole is void.").

A district court's review of an arbitration award is "both limited and highly deferential." *Id.* Nonetheless, the Ninth Circuit has held that "[a]lthough an arbitrator has great freedom in determining an award, he may not dispense his own brand of industrial justice." *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir. 2000) (quoting *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983)).

## B.  Procedural Rules for Vacating Awards Under New Jersey State Arbitration Law

The New Jersey Revised Statutes governing vacatur of arbitration awards were enacted as a "counterpart" to the FAA. *Minkowitz v. Israeli*, 77 A.3d 1189, 1202 (N.J. Super. App. Div. 2013). In addition to the four limiting circumstances listed in Section 10 of the FAA, the following situations also warrant vacatur under New Jersey state arbitration law:

(5)     [where] there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising an objection . . . not later than the beginning of the arbitration hearing; or

(6)     [where] the arbitration was conducted without proper notice of the initiation of an arbitration . . . so as to substantially prejudice the rights of a party to the arbitration proceeding.

N.J. Rev. Stat. § 2A:23B-23 (2013); *see also Fawzy v. Fawzy*, 973 A.2d 347, 355 (N.J. 2009).   Similar to the FAA, there is a "strong preference for judicial confirmation of arbitration awards" under New Jersey state law.  *Minkowitz*, 77 A.3d at 1203.  New Jersey state courts are thus required to "grant arbitration awards considerable deference."  *Id.*

**III.   Discussion**

The Court must decide whether the portion of the Award finding Plaintiff liable for repayment of the Notes should be vacated and the rest affirmed.  As mentioned, the Court's analysis of the Award is limited to the FAA and consistent New Jersey state procedural rules for arbitration as well as New Jersey state substantive, decisional law where applicable.

Plaintiff argues the portion of the Award finding UBS joint and severally liable for constructively discharging Plaintiff and negligently misrepresenting the loan program makes it impossible to also conclude that Plaintiff is liable for the Notes.   Plaintiff specifically argues the portion of the award relating to his liability should be vacated because: (1) it constitutes a manifest disregard of the law;  (2) the Arbitrators exceeded their powers in issuing an irrational Award; and (3) Arbitrator Dean Jackson Call ("Arbitrator Call") exhibited evident partiality against Plaintiff.

UBS first asserts various procedural deficiencies relating to Plaintiff's Petition and Motion to Vacate.  As to the merits of Plaintiff's arguments, UBS contends that New Jersey state arbitration law does not permit vacating an Award due to manifest disregard of the law, and Plaintiff has not shown manifest disregard under FAA standards.  UBS also argues that Plaintiff has either waived his partiality argument or cannot meet his burden to show

1  Arbitrator Call acted with evident partiality. UBS therefore urges the Court to confirm the
2  Award as a whole.

3      In making their arguments, both parties cite to a slew of out of circuit, non-binding
4  case law and comingle New Jersey state arbitration law—which applies to the matter at
5  hand—with New Jersey federal law.  Thus, the Court will clarify the federal and state
6  arbitration standards that apply before considering the parties' arguments.  The Court will
7  first resolve the procedural issues raised by UBS.  The Court will then consider the merits
8  of Plaintiff's arguments to decide whether he has identified grounds for vacating the
9  challenged portion of the Award.

10      **A.    Procedural Issues**

11      UBS raises three procedural issues regarding Plaintiff's Petition and Motion to
12  Vacate.  First, UBS posits that Plaintiff cannot challenge only a portion of the Award and
13  can only move to vacate it in its entirety.  Second, UBS asserts that Plaintiff has failed to
14  provide a sufficient factual record to predicate his vacatur arguments.  Last, UBS argues
15  that Plaintiff waived his evident partiality challenge against Arbitrator Call because
16  Plaintiff failed to make this claim in his original Petition to confirm.  The Court disagrees
17  and finds that Plaintiff's Petition and Motion to Vacate are procedurally proper.

18      **1.    Whether an Arbitration Award can be Partially Vacated**

19      UBS misrepresents federal law in suggesting the FAA does not contemplate partial
20  vacatur of an award.  To the contrary, "an award may be void in part, and good for the
21  residue" under the FAA.  *Comedy Club, Inc.*, 553 F.3d at 1288 (quoting *Lyle*, 18 U.S. (5
22  Wheat.) at 409).  However, "if that part which is void be so connected with the rest as to
23  affect the justice of the case between the parties, the whole is void."  *Lyle*, 18 U.S. (5
24  Wheat.) at 409. In other words, "[i]f an arbitrator exceeded the scope of his authority in
25  issuing an award, and that award is divisible, [a district court] may vacate part of the award
26  and leave the remainder in force."  *Comedy Club, Inc.*, 553 F.3d at 1288 (citing Lyle, 18
27  U.S. (5 Wheat.) at 409); *see, e.g.*, *JPMorgan Chase Bank v. KB Home Nev., Inc.*, 478 F.
28  App'x 398 (9th Cir. 2012) (affirming the district court's order partially vacating an

arbitration award).

New Jersey state courts have likewise vacated portions of arbitration awards when warranted.  *E.g.*, *Tretina v. Fitzpatrick & Assocs.*, 640 A.2d 788 (N.J. 1994) (vacating the portion of the arbitration award because the alimony allowance represented a fundamental error of New Jersey law); *see also, e.g.*, *McHugh, Inc. v. Soldo Constr. Co., Inc.*, 569 A.2d 293 (N.J. Super. Ct App. Div. 1990) (vacating the objectionable portion of the arbitration award because the arbitrators exceeded their powers).

Here, whether Plaintiff is liable for payments of the Notes is a divisible issue from whether UBS is liable for constructive discharge and negligent misrepresentation.  Both concern independent theories of liability.  Plaintiff further proves these issues are separate when noting the award of damages to Plaintiff "shall not be an offset" to the separate award of damages to UBS.  (Doc. 28 at 4 (citing Doc. 1-3 at 23)).  Thus, if Plaintiff can prove the Arbitrators erred in finding him liable for the Notes, the Court can vacate that portion of the Award under the FAA and New Jersey state arbitration law.

**2.      Whether Plaintiff has provided a Sufficient Factual Record**

UBS cites to a series of cases from the federal districts of Maine, New York, Illinois, Pennsylvania, as well as the Eleventh Circuit to argue Plaintiff "failed to provide a full and complete record" to sufficiently support a statutory grounds for vacatur.  (Doc. 25 at 7).  But the Court is not bound by any of these authorities.  UBS does not point the Court to any standards under the FAA or New Jersey state arbitration law for support and so the Court remains unpersuaded.  It is not the Court's responsibility to go searching for binding support on a parties' behalf.  The Court therefore reject's UBS's argument that Plaintiff must provide a more detailed factual record to prevail.

**3.      Whether Plaintiff Can Raise Additional Arguments in his Motion to Vacate**

Last, UBS argues that Plaintiff is confined to the claims made in his Petition to Vacate and accordingly cannot assert new arguments in his Motion to Vacate, namely that the Panel exceeded its powers and returned an irrational award.  (*Id*. at 8).  In this way,

1    UBS analogizes Plaintiff's Petition to Vacate as a "complaint" to reason he cannot use his

2    Motion to "flesh out inadequate pleadings" at the summary judgment stage. (*Id.* at 8–9).

3    But UBS's cited authorities[4] are concerned with the lack of notice provided by arguments

4    raised for the first time in a response to a summary judgment motion. Here, Plaintiff raised

5    the argument at the outset of his Motion. *See Indep. Towers of Wash. v. Washington*, 350

6    F.3d 925, 929 (9th Cir. 2003) (explaining the court only reviews issues argued in a party's

7    opening brief); *cf. Foley v. Graham*, 2022 WL 1714293, at *1 (distinguishing improper

8    arguments that were "not specifically and distinctly raised and argued in the opening

9    brief"). Thus, UBS was put on sufficient notice of Plaintiff's argument and afforded a

10   sufficient opportunity to respond, to which UBS has indeed responded.

11        Moreover, the Court construes Plaintiff's Motion to Vacate argument that the

12   Arbitrators exceeded their powers as one that stems from his Petition to Vacate argument

13   that the Arbitrators acted in manifest disregard of the law. As discussed below, arbitrators

14   "exceed their powers" under Section 10(a)(4) of the FAA in two ways: when the resulting

15   award is in "manifest disregard of the law" or "completely irrational." *Comedy Club*, 553

16   F.3d at 1288.[5] Thus, by arguing manifest disregard under Section 10(a)(4) in his Petition

17   to Vacate, Plaintiff implicitly argued the Arbitrators have exceeded their power in this

18   respect. To later argue the arbitrators exceeded their power in another manner—by

19   returning an irrational award—relates back to Plaintiff's initial Section 10(a)(4) theory

20   made in his Petition to Vacate.

21        In sum, the Court rejects UBS's efforts to render Plaintiff's Petition and Motion as

22   procedurally deficient.

23   / / /

---

24

25   [4] UBS cites to *Bullard v. Wastequip Manufacturing Company LLC*, 2015 WL 12766467, at *10 (C.D. Cal. 2015); *Navajo Nation v. United States Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); and *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1139 (9th Cir. 2004). (Doc. 25 at 8–9).

26

27

28   [5] Although the same may not be true under New Jersey law, the Court's review of the Award is only bound to those New Jersey state arbitration rules that are *consistent* with the FAA. *See supra* Section II.

- 11 -

1

### B.      Substantive Issues

Having resolved the procedural issues, the Court now turns to the merits of the parties' arguments.  The Court must decide: (1) whether the Panel's finding that Plaintiff is liable for the Notes constitutes a manifest disregard of the law; (2) whether the Panel exceeded their powers in issuing an irrational Award; and (3) whether Arbitrator Call exhibited evident partiality against Plaintiff.

### 1.      Whether an Arbitrator Exceeded its Powers and Acted in Manifest Disregard of the Law

Plaintiff first argues the Court should vacate the Award because the Panel "manifestly disregarded the law by awarding UBS the unpaid principal, and reduced accrued interest, under the Notes despite finding that [Plaintiff] was constructively discharged and that the loan program was misrepresented to him" by UBS.  (Doc. 1-3 at 10).  Although he seeks to affirm the portion of the Award finding UBS liable, Plaintiff asserts the Panel disregarded impossibility or impracticability of performance and frustration of purpose as complete defenses to Plaintiff's alleged breach of contact.  Under Plaintiff's view, the two findings of liability are mutually exclusive—the finding that he is liable should be vacated so that the finding that UBS is liable can stand.

### a.      Legal Standards for Manifest Disregard of the Law

The parties are in dispute over whether an arbitrator's manifest disregard of the law warrants vacating an arbitration award under New Jersey state law. (*Compare* Doc. 1-3 at 9 *with*  Doc. 12 at 7–8).  However, as explained below, the truth of this proposition is irrelevant because the manifest disregard standard for vacatur is indeed recognized under federal law. The parties certainly concede as much.  To apply a New Jersey state arbitration rule that an arbitrator's manifest disregard of the law does not warrant vacatur would contradict the FAA and so the Court will not entertain such arguments.

"[I]n this circuit, an arbitrator's manifest disregard of the law remains a valid ground for vacatur of an arbitration award[.]"  *Comedy Club, Inc.*, 553 F.3d 1277, 1281 (9th Cir. 2009).  Under Section 10(a)(4) of the FAA, arbitrators "exceed their powers" when the

resulting award is in "manifest disregard of the law" or "completely irrational." *Comedy Club*, 553 F.3d at 1288.  Manifest disregard of the law "means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004).  Rather, "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.*; *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) ("[The standard requires a] showing that the arbitrators 'knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.").

The manifest disregard standard "afford[s] an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp.*, 341 F.3d at 997.  "The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)." *Kyocera Corp.*, 341 F.3d at 1003.  There "must be some evidence in the record, *other than the result*, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1105 (emphasis added).

Under these principals, the manifest disregard standard presents a three-fold inquiry in the present matter: (1) whether the Panel was aware at the time it issued the Award of the contract defenses of impossibility or impracticability of performance and frustration of purpose; (2) whether the Panel appreciated that the defenses controlled the outcome of the Award; and (3) whether the Panel willingly refused to apply the contract defenses.  *Stolt-Nielsen*, 559 U.S. at 672 n.3; *see, e.g.*, *Comedy Club, Inc.*, 553 F.3d at 1293 (the court found there was certain case law applicable to the arbitration and concluded the arbitrator acted in manifest disregard of the law when it was aware the applicable case law existed at the time the award was issued but "interpreted in a way to render it inapplicable").

In the Prior Arbitration, Plaintiff stated as an affirmative defense that "[t]he actions taken by UBS [] made [Plaintiff's] ability to comply with the alleged obligations described in [UBS's Amended Statement of Claim] impractical or impossible to perform." (Doc. 1-3 at 56). Plaintiff also claimed that "[t]he actions and inactions of UBS frustrated [Plaintiff's] ability to repay the alleged notes." (*Id.*) The Court thus concludes the Panel was aware of these identified defenses at the time it issued the Award. And because the Award ultimately found Plaintiff liable for the Notes, the Court also concludes the Panel interpreted the defenses in a way that rendered it inapplicable to Plaintiff's breach of contract. Therefore, the only question remaining is whether there is evidence *apart from the outcome of the Award* showing the Panel appreciated that the defenses controlled the outcome of the Award. *Bosack*, 586 F.3d at 1105. If the answer is in the affirmative, then the Panel manifestly disregarded the defenses under Section 10(a)(4) of the FAA.

### b.    The Panel's Findings Were not in Manifest Disregard of the Law

Plaintiff contends the Panel's finding that both parties are liable is "completely irreconcilable" because "UBS' illegal actions . . . made it impossible for [Plaintiff] to comply with the terms of the Notes and remain at UBS until the entirety of the Notes were repaid using the annual transition payments," and "also made it subsequently impossible for [Plaintiff] to repay the loans even after his constructive discharge." (Doc. 1-3 at 10–11). UBS argues that Plaintiff cannot show manifest disregard because "[t]he Award gives no basis for the relief afforded the parties and cites to no principles of law." (Doc. 12 at 9). The Court agrees with UBS.

In issuing its finding that Plaintiff is liable for the Notes, the Panel simply stated that "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows[.]" (Doc. 1-3 at 23). The Panel did not set forth any justifications for their reasoning as to why Plaintiff's affirmative defenses to breach of contract were inapplicable, nor was it required to." *Bosack*, 586 F.3d at 1104 ("Arbitrators are not required to set forth

their reasoning supporting an award.   An arbitrators' 'award may be made without explanation of their reasons and without a complete record of their proceedings.'") (quoting *Wilko v. Swan*, 346 U.S. 427, 436 (1953).[6]

Because the Panel chose not to elaborate on its legal reasoning, there is no available evidence to conclude that the Panel "appreciated that [the contract defenses] controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Stolt-Nielsen*, 559 U.S. 662, 672 n.3 (2010).   Nor does the Panel indicate their finding of UBS's liability was directly tied to their finding of Plaintiff's liability.   It is therefore "impossible to determine whether they acted with manifest disregard for the law." *Bosack*, 586 F.3d at 1104.   Moreover, even if the Panel did not make an explicit finding that the contract defenses were inapplicable, "this does not warrant vacatur." *Bosack*, 586 F.3d at 1104.

The Court therefore rejects Plaintiff's argument that the Panel manifestly disregarded the defenses under Section 10(a)(4) of the FAA.

### 2.   Whether Arbitrator Exceeded its Powers and Returned an Irrational Award

Plaintiff also argues the Panel exceeded its powers in part because the Award is "completely irrational."   (Doc. 24 at 13).   Plaintiff first says that while arbitration was mandatory under the Notes and Transition Agreements, "that fact should not be confused as an arbitration agreement that was 'bargained for.'"   Doc. 24 at 13).   Plaintiff further contends "there is no rational basis for the Panel's conclusion that [Plaintiff] should pay back Notes that he should never have had in the first place and that UBS intentionally, or recklessly, prevented him from completing the term of the loan agreements." (Doc. 24 at 14, 15).

/ / /

---

[6] Neither do the relevant FINRA Arbitration Rules require that arbitrators issue an explained decision, unless requested by the parties. *See* 13000 Code of Arbitration Procedures for Industry Disputes Section 13904(g).   The parties do not mention making such request in the Prior Arbitration.

### a.    Legal Standards for Irrational Arbitration Awards

The second way arbitrators exceed their powers under Section 10(a)(4) of the FAA is by issuing a "completely irrational award[.]" *Comedy Club*, 553 F.3d at 1288. "[T]he 'completely irrational' standard is extremely narrow and is satisfied only 'where the arbitration decision' fails to draw its essence from the agreement." *Comedy Club, Inc.*, 553 F.3d at 1288 (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001)). An arbitration award "'draws its essence from the agreement' if the award is derived from the agreement, viewed 'in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Bosack*, 586 F.3d at 1106). In considering this standard, the Court's review is limited to "whether the arbitrator's decision draws its essence from the contract, not the rightness or wrongness of the arbitrator's contract interpretation." *Id.* (internal quotations omitted).

New Jersey state arbitration law likewise provides that "an arbitration award must draw its essence from the terms of the agreement executed between the parties." *Pepper ex rel. Pepper v. Sadley*, 2013 WL 2257842, at *2 (N.J. Super. Ct. App. Div. May 24, 2013). The New Jersey Supreme Court has explained that when parties have agreed "on a defined set of rules that are to govern the arbitration process, an arbitrator exceeds his powers when he ignores the limited authority that the contract confers." *Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris*, 495 A.2d 865, 869 (N.J. 1985). Thus, "[t]he scope of an arbitrator's authority depends on the terms of the contract between the parties." *Id.*

Here, under the relevant arbitration provisions in the Notes and Transition Agreements, the parties agreed that "any arbitration of a [c]overed [c]laim will be conducted under the auspices and rules of [FINRA] in accordance with the FINRA [Arbitration Rules]." (Doc. 13 at 11, 19, 27, 35, 45, 52, 63, 70). The question therefore is whether the Final Award draws its essence from the arbitration agreements and governing FINRA Arbitration Rules. If the answer is in the affirmative, then the Panel exceeded its

1
2

powers and returned an irrational award under Section 10(a)(4) of the FAA and New Jersey state arbitration law.

3

###### b.     The Panel's Findings Were not Completely Irrational

4
5
6
7
8
9
10
11
12
13

Plaintiff relies on a case from the Third Circuit to argue he did not "bargain for" the relevant arbitration agreements and so the Panel exceeded its authority.  (Doc. 24 at 13). At the outset, this Court is not bound by this case law as its review is limited to "the federal procedural rules for arbitration under the FAA as interpreted by the circuit in which the Court sits [and] New Jersey state law rules for arbitration that are consistent with the FAA." *See supra* Section II.  Regardless, whether or not Plaintiff bargained for the agreement does not aid the Court in determining if the Award draws its essence from the scope of the contract.  Such arguments might relate to the validity of the agreement as a whole, but Plaintiff directly "acknowledged that he was bound to arbitrate the dispute with UBS" and thus conceded to the validity of the arbitration provisions.  (Doc. 28 at 8).

14
15
16
17
18
19
20
21
22
23
24

The remainder of Plaintiff's irrational award argument is merely a recitation of facts surrounding the parties' contract disputes.  (Doc. 24 at 14–15).  Plaintiff interprets the Panel's findings to conclude the Panel failed to apply Plaintiff's affirmative defenses and so the award is "completely irrational."  (*Id.* at 13–15).  But Plaintiff's alternative interpretations are irrelevant to the rational basis of the Award because Plaintiff does not suggest the Award fails to draw its essence from the agreement or governing FINRA Arbitration Rules.  *See Aspic Eng'g & Constr. Co.*, 913 F.3d at 1166.  Plaintiff's irrational award argument merely "amounts to an invitation to review the [P]anel's factual findings and legal conclusions[,]" which the Court "is prohibited from doing [.]"  *Bosack*, 586 F.3d at 1104.

25
26
27

The Court therefore rejects Plaintiff's argument that the Panel exceeded its powers and returned an irrational award under Section 10(a)(4) of the FAA and New Jersey state arbitration law.

###### 3.     Whether an Arbitrator Exhibits Partiality

28

Plaintiff last argues the Court should vacate the Award under a theory of actual bias

because Arbitrator "Dean Call[] exhibited repeated and disturbing instances of evident partiality against [Plaintiff] and his claims." (Doc. 1-3 at 15). UBS contends Plaintiff's partiality argument is untimely under the waiver doctrine because a party who fails to object to the real or evident partiality of an arbitrator before an award is issued waives its evident partiality challenge under certain circumstances. UBS further asserts that even if Plaintiff did not waive his argument, he cannot meet his burden of showing evidence of actual bias.

### a. Legal Standards for Evident partiality

To show "evident partiality" in an arbitrator under the Section 10(a)(2) of the FAA, "[Plaintiff] either must establish specific facts indicating actual bias toward or against a party or show that [the Arbitrator] failed to disclose to the parties information that creates '[a] reasonable impression of bias.'" *A. Miner Contracting, Inc. v. Dana Kepner Co.*, 696 F. App'x 234, 235 (9th Cir. 2017) (quoting *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 646 (9th Cir. 2010)). The Ninth Circuit clarified that the standard for what constitutes a reasonable impression "means something different in an actual bias case than it means in nondisclosure cases[.]" *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, (9th Cir. 1996). When a party alleges evident partiality under a theory of actual bias, as Plaintiff does here, he "must establish specific facts which indicate [an arbitrator's] improper motives" to meet the reasonable impression standard. *Id.*; *Pac. W. Sec., Inc. v. George*, 670 F. App'x 954, 955–956 (9th Cir. 2016); *see also Golden v. O'Melveny & Myers LLP*, 2021 WL 3466044, at *1 (9th Cir. Aug. 6, 2021).

New Jersey state arbitration law likewise provides that vacatur on evident partiality grounds requires a "showing of actual bias or partiality or [that] there is an appearance of partiality in the course of the arbitrator's conduct in the hearing, deliberation, decision or award." *IAFF Local 1197 v. Twp. of Edison*, 2015 WL 6121581, at *4 (N.J. Super. Ct. App. Div. Sep. 24, 2015) (quoting *Barcon Assocs., Inc. v. Tri-Cnty. Asphalt Corp.*, 430 A.2d 214, 222 (N.J. 1981)).

Both the Ninth Circuit and the New Jersey state courts recognize a form of the

waiver doctrine when considering evident partiality claims.  Under the Ninth Circuit's waiver doctrine, "a party with constructive knowledge of potential partiality of an arbitrator waives its right to challenge an arbitration award based on evident partiality if it fails to object to the arbitrator's appointment or his failure to make disclosures until *after* an award is issued."  *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (emphasis added) (nondisclosure case).

The New Jersey state courts apply a similar waiver doctrine that broadly bars as untimely evident partiality claims that are brought after an arbitration award is issued.  *See Asphalt Paving Sys., Inc. v. Associated Asphalt Partners, LLC*, 2020 WL 6703377, at *6– 7 (N.J. Super. Ct. App. Div. Nov. 16, 2020) (applying the waiver doctrine to an actual bias case); *see also Barcon Assocs.*, 430 A.2d at 222 (applying the waiver doctrine to a nondisclosure case).  In actual bias cases where an arbitrator's appearance of partiality during a hearing is immediately known to the plaintiff and his counsel, the plaintiff cannot "silently await the arbitrator's decision" before "claim[ing] the exchange required vacation of the award based on an alleged appearance of impropriety."  *Asphalt Paving Sys., Inc.*, 2020 WL 6703377, at *6.  To preserve his evident partiality claim, the plaintiff is required to "object at that time, request that the arbitrator recuse himself, or [otherwise] seek the disqualification of the arbitrator."  *Id.*

### b.    Plaintiff Waived his Evident Partiality Argument

UBS says Plaintiff waived this argument because he did not raise his concerns of Arbitrator Call's partiality to the Panel in real time during the arbitration proceedings.  (Docs. 12 at 12; 25 at 17).  Plaintiff contends he did timely raise the issue when his counsel submitted a confidential letter to FINRA at the immediate conclusion of the hearing and before the Panel issued the Award.  (Doc. 1-3 at 85–86).  Therein, Plaintiff's counsel expressed concerns of Arbitrator Call's evident partiality, stating "it appeared, repeatedly, that he was prejudging evidence as it was being introduced and before presentation of all relevant documentary and testimonial evidence presented by [Plaintiff]."  (Doc. 1-3 at 85).  Thus, the parties disagree as to who and at what time a partiality objection must be raised

to be considered timely under the Ninth Circuit and New Jersey state law waiver doctrines.

The Ninth Circuit waiver cases do not discuss the issue of who a party must make a timely objection of partiality to—the Panel or the arbitration organization. But New Jersey state arbitration law makes clear that a timely objection is one made directly "to an arbitrator" when the arbitrator's appearance of partiality during a hearing is immediately known to the plaintiff and its counsel. *Asphalt Paving Sys., Inc.*, 2020 WL 6703377, at *7.

Here, Plaintiff concedes in his confidential letter that he and his counsel suspected partiality in Arbitrator Call at the hearing, yet Plaintiff did not object at that time, request that Arbitrator Call recuse himself, or otherwise seek the disqualification of Arbitrator Call. *Id.* Nor did Plaintiff object to Arbitrator Call's appointment before the Award was issued to preserve his evident partiality challenge. *Fidelity*, 386 F.3d at 1313. Plaintiff's letter explicitly stated his objection "should not be forwarded to any member of the Panel in this case or to opposing counsel – certainly not before the Panel issues its award." (Doc. 1-3 at 85). Therefore, Plaintiff waived his evident partiality argument under the Ninth Circuit and New Jersey state waiver doctrines.

### c.    Plaintiff Cannot Show Evident Partiality in Arbitrator

Even if Plaintiff did not waive his evident partiality argument, the Court alternatively rejects the merits of his argument. Although Plaintiff details Arbitrator Call's behavior at the hearing to assert evidence of partiality, Plaintiff offers no evidence of "improper motivation." *Golden*, 2021 WL 3466044, at *1. Moreover, the Court finds no language in the Award that suggests partiality. *Id.*

The Court therefore rejects Plaintiff's argument that Arbitrator Call exhibited evident partiality under Section 10(a)(2) of the FAA and New Jersey state arbitration law.

## IV.    Conclusion

Plaintiff's Petition and Motion to Vacate Award are procedurally proper, but lack merit. Plaintiff cannot show the Panel exceeded its powers by manifestly disregarding the law, or by returning an irrational award. Nor can Plaintiff show that Arbitrator Call acted with evident partiality. In sum, Plaintiff has not identified a limited circumstance under

the FAA or consistent New Jersey state arbitration law that authorizes the Court to vacate the Award.  The Court must therefore grant UBS's Petition and Motion to Confirm Award under 9 U.S.C. § 9.  *See Stafford*, 855 F. App'x at 427.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants UBS Financial Services Incorporated and UBS Credit Corporation's "Motion for Summary Judgment to Grant UBS's Cross-Petition to Confirm Arbitration Award" (Doc. 23) is **GRANTED**.  The Clerk of the Court is kindly directed to enter judgment on the Award (Doc. 1-3 at 20–26) under 9 U.S.C. § 13.

**IT IS FINALLY ORDERED** that Plaintiff William Paynter's "Motion for Summary Judgment on Petition to Vacate Arbitration Award" (Doc. 24) is **DENIED**.

Dated this 2nd day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge